IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDREW SCOTT WALLACE                    :

                                        :

        v.                              :   Civil Action No. DKC 13-0101

                                        :

JEFFREY THOMAS TROST, et al.            :

                                        :

## MEMORANDUM OPINION

Presently pending and ready for resolution is a motion to remand filed by Plaintiff Andrew Scott Wallace (ECF No. 24) and motions to dismiss filed by Defendants William Vollmar, II, Stephen G. Diamantoni, and Diamantoni & Associates Family Practice, P.C. (collectively, "the Diamantoni defendants") (ECF No. 12), and Jeffrey Thomas Trost (ECF No. 14). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion to remand will be denied and the motions to dismiss will be granted.[1]

---

[1] Plaintiff also filed a motion to strike (ECF No. 25), in which he appears to argue that, because the case was untimely removed, Trost's motion to dismiss should be stricken. (ECF No. 25). In light of the ruling on his motion to remand, this motion will be denied as moot. On March 18, Plaintiff filed a motion for entry of default against Trost, citing that defendant's failure to answer the complaint. (ECF No. 31). Entry of default is only available, however, where a defendant has "failed to plead or otherwise defend," Fed.R.Civ.P. 55(a), and Trost timely filed a motion to dismiss. Thus, Plaintiff's motion for entry of default will be denied.

I.   **Background**

Plaintiff, proceeding *pro se*, commenced this action on November 2, 2012, by filing a complaint in the Circuit Court for Calvert County, Maryland.  The case was later transferred to the Circuit Court for Prince George's County, and, on January 9, 2013, the Diamantoni defendants removed to this court on the basis of diversity of citizenship.  The notice of removal recites that "Plaintiff is a citizen of Maryland while [all defendants] are citizens of the Commonwealth of Pennsylvania"; that the amount in controversy exceeds the jurisdictional minimum of $75,000; that the Diamantoni defendants received the complaint on December 11, 2012 (although they do not concede proper service); and that Trost, the remaining defendant, consented to removal.  (ECF No. 1 ¶¶ 12, 13, 15, 19).[2]

On January 16, 2013, the Diamantoni defendants filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim.  (ECF No. 12).  On the same date, Trost separately moved to dismiss, adopting the arguments advanced by the Diamantoni defendants in their motion papers.  (ECF No. 14).  On February 19, Plaintiff filed papers

---

[2]   The Diamantoni defendants separately filed several exhibits, including an email from Trost, dated January 9, 2013, stating, "I give consent to removal in regards to the Wallace case."  (ECF No. 6).  On January 24, in response to the court's standing order concerning removal, Trost confirmed that he "expressly consented to the removal" on January 9.  (ECF No. 18 ¶ 5).

opposing Defendants' motions (ECF No. 23), as well as his motion to remand (ECF No. 24).

## II.  Motion to Remand

Plaintiff challenges the sufficiency of the notice of removal in several respects.  He argues that insofar as the removal notice reflects that Defendants are "residents" of Pennsylvania, it is insufficient to establish that they are citizens of that state, and, therefore, that Defendants have not satisfied the requirements for diversity jurisdiction.  He further contends that Trost's original consent to removal was neither sufficiently formal, nor timely.

On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court," reflecting the reluctance of federal courts "to interfere with matters properly before a state court."  *Richardson v. Phillip Morris Inc.*, 950 F.Supp. 700, 701-02 (D.Md. 1997) (internal quotation omitted).  "The federal removal statute allows a defendant to remove to federal district court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'"  *Davis v. North Carolina Dep't of Corrections*, 48 F.3d 134, 138 (4th Cir. 1995) (quoting 28 U.S.C. § 1441(a)).  Pursuant to 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter

in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States[.]"

Defendants removing a case from state court are required to file a signed notice of removal "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). The language contained in § 1446(a) is "deliberately parallel to the requirements for notice pleading found in Rule 8(a) of the Federal Rules of Civil Procedure." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008).

> [J]ust as a plaintiff's complaint sufficiently establishes diversity jurisdiction if it alleges that the parties are of diverse citizenship and that the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332, so too does a removing party's notice of removal sufficiently establish jurisdictional grounds for removal by making jurisdictional allegations in the same manner.

*Ellenburg*, 519 F.3d at 200 (internal marks and citations removed). Thus, a notice of removal is held to no higher pleading standard "than the one imposed on a plaintiff in drafting an initial complaint." *Joyner v. A.C. & R. Insulation Co.*, Civ. No. CCB-12-2294, 2013 WL 877125, at *5 (D.Md. Mar. 7, 2013) (quoting *Ellenburg*, 519 F.3d at 200).

The representations contained in Defendants' removal papers are sufficient to demonstrate federal jurisdiction based on diversity of citizenship. While it is true, as Plaintiff asserts, that "state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile," *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998), Defendants' notice of removal explicitly recites that Defendants "are all citizens of the Commonwealth of Pennsylvania" (ECF No. 1 ¶ 12). When combined with the more specific assertions that each of the "individual natural person" defendants reside in Pennsylvania and are "deemed . . . citizen[s]" of that state, and that the corporate defendant is organized under the laws of Pennsylvania with a principal place of business there, the removal notice sufficiently demonstrates Defendants' citizenship. (ECF No. 1 ¶¶ 7-10).[3] Because the notice of removal further reflects that Plaintiff is a Maryland citizen and that the amount in controversy exceeds the jurisdictional minimum, it contains sufficient allegations to establish diversity jurisdiction in this court. *See* 28 U.S.C. § 1332(a).

---

[3] Indeed, the complaint lists Pennsylvania addresses for all defendants; recites that Trost, the principal tortfeasor, "practiced out of the medical offices of Defendant Diamantoni & Associates, of Lancaster, Pennsylvania" (ECF No. 2 ¶ 1); and alleges tortious conduct occurring in that state.

The notice also sufficiently shows Trost's consent to removal. Pursuant to 28 U.S.C. § 1446(b)(2), "all defendants who have been properly joined and served must join in or consent to the removal of the action." Here, the notice itself reflects that the Diamantoni defendants "obtained consent from Dr. Trost to remove this case" (ECF No. 1 ¶ 18), as does an attached email purportedly drafted by Trost on the date of removal (ECF No. 6). As Judge Motz explained in *Mayo v. Board of Educ. of Prince George's County*, 797 F.Supp.2d 685, 688 (D.Md. 2011),

> Nothing in 28 U.S.C. § 1441 or § 1446 imposes a requirement that a defendant submit a writing to the court reflecting consent to removal. All that the removal statute requires is that a defendant consent to removal. . . . [I]t may be assumed that generally attorneys will act professionally and will not represent in a notice of removal that another defendant has consented to the removal unless that defendant has, in fact, consented, either orally or in writing.

Thus, regardless of the effect of Trost's email, the mere assertion by the Diamantoni defendants, through counsel, that Trost consented to removal was sufficient.

Plaintiff's challenge to the timeliness of removal appears to be contingent on the success of his argument that the notice of removal was insufficient to establish Trost's consent. Plaintiff contends that Trost's consent was not established until January 24, 2013, when his counsel responded to the

court's standing order concerning removal more than thirty days after he was served with the complaint. *See* 28 U.S.C. § 1446(b) (requiring that a notice of removal be filed within thirty days after receipt of the initial pleading by the defendant). As noted, however, the removal notice was sufficient to establish Trost's consent to removal. The record reflects that the complaint was served on Trost on December 11, 2012, and received by the Diamantoni defendants on December 12, 2012. Therefore, the notice of removal, filed on January 9, 2013, was timely. *See* 28 U.S.C. § 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to removal even though that earlier-served defendant did not previously initiate or consent to removal").

In sum, Defendants' notice of removal alleged all requirements for establishing federal diversity jurisdiction; it effectively established Dr. Trost's consent to removal; and the action was timely removed. Accordingly, Plaintiff's motion to remand will be denied.

## III. Motions to Dismiss

Defendants move to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim. Because the court will find that personal jurisdiction

is lacking, it does not reach Defendants' alternative ground for dismissal.[4]

When a court's power to exercise personal jurisdiction is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334

---

[4] It bears mention, however, that the complaint appears to be time-barred. Although the legal basis is difficult to discern, Plaintiff seeks damages resulting from an alleged adulterous affair between Trost and Plaintiff's ex-wife during the course of her marriage to Plaintiff. The complaint does not reflect the dates of this conduct, but declarations submitted by Trost and Plaintiff's ex-wife indicate that the affair ended in February 2004. The court may not consider outside evidence in connection with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), *see Kress v. Food Employers Labor Relations Ass'n*, 217 F.Supp.2d 682, 684 (D.Md. 2002), but it may take judicial notice of publically available records, *see Waugh Chapel South, LLC v. United Food & Commercial Workers Union Local 27*, 855 F.Supp.2d 476, 486 (D.Md. 2012). Court records reflect that Annette Renee Wallace divorced Andrew Scott Wallace by a judgment of absolute divorce entered by the Circuit Court for Calvert County, Maryland, on March 9, 2006. Even assuming that a sexual relationship between Trost and Ms. Wallace extended beyond that date, as Plaintiff suggests, it was no longer an adulterous relationship. Thus, Plaintiff's complaint, filed approximately six years and eight months after the divorce, is likely barred by the applicable statute of limitations. Curiously, the complaint alleges that, on December 25, 2012 – *i.e.* nearly two months after the complaint was filed – that Trost, during a telephone conversation with Ms. Wallace, made an "implied threat" regarding a "mysterious fire" at Plaintiff's home two days earlier. (ECF No. 2, at 7). Insofar as the same "threat" was referenced in a letter from Plaintiff's counsel in the divorce proceeding, dated October 24, 2007, the date indicated in the complaint appears to be inaccurate. (ECF No. 23-1).

F.3d 390, 396 (4th Cir. 2003) (internal citation omitted).   If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).   If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396.   In determining whether the plaintiff has met its burden, all jurisdictional allegations must be construed in the light most favorable to the plaintiff, and the most favorable inferences must be drawn for the existence of jurisdiction.  *See New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005).

      Where a defendant is a nonresident, a federal district court may exercise personal jurisdiction only if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993).   The Maryland long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment.  *See ALS Scan,*

*Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002) (citing *Androutsos v. Fairfax Hosp.*, 323 Md. 634, 637 (1991)).  This broad reach does not suggest that analysis under the long-arm statute is irrelevant; rather, it reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." *Dring v. Sullivan*, 423 F.Supp.2d 540, 545 (D.Md. 2006) (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 118-19 n. 2 (D.Md. 1995)); *see also Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n. 6 (2006) (although the "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause," it is not "permissible to simply dispense with analysis under the long-arm statute").  To satisfy the long-arm prong of the analysis, a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in opposition to a Rule 12(b)(2) motion.  *See Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 652 (D.Md. 2001); *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 704 n. 1 (D.Md. 2004).<sup>5</sup>

---

<sup>5</sup> The Maryland long-arm statute provides, in relevant part:

> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

Plaintiff has failed to make the requisite showing of personal jurisdiction for any of the defendants.   According to the complaint, the corporate defendant is a medical practice based in Lancaster, Pennsylvania, and the individual defendants

---

(b)   A   court   may   exercise   personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103.

– doctors associated with that practice – are domiciled in that state.    There  is  no  indication  whatsoever  of  any  contacts between any defendant and the State of Maryland.   The complaint, which  relates  largely  to  adulterous  conduct  between  Trost  and Plaintiff's wife during her marriage to Plaintiff, does allege that  at  least  some  of  this  conduct  occurred  in  Ms.  Wallace's home.   In his opposition papers, Plaintiff suggests that, at the relevant  time,  Ms.  Wallace  resided  in  Maryland.   (ECF  No.  23,  at 7).   In  reply,  however,  Trost  explains  that  Plaintiff's contention  is  based  on  a  misreading  of  a  deposition  transcript in the divorce proceeding, during which Trost testified that he visited  Ms.  Wallace  at  her  home  in  Pennsylvania  and  that  she later  told  him,  in  an  e-mail  after  the  relationship  ended,  that she had moved to Maryland.   (ECF No. 28, at 5).   Indeed, Trost and  Ms.  Wallace  have  provided  declarations  affirming  that "[e]very  physical  meeting  and  interaction"  between  them "occurred  in  Pennsylvania"  and  that  none  occurred  in  Maryland. (ECF Nos. 28-1, 28-2).   According to the complaint, the tortious conduct  allegedly  committed  by  the  other  defendants  occurred  at the  medical  office  in  Pennsylvania,  and  Plaintiff  does  not  argue otherwise in his motion papers.   Because Plaintiff does not cite any  provision  of  the  Maryland  long-arm  statute,  nor  does  any appear  to  be  applicable,  he  has  failed  to  establish  personal

jurisdiction over the defendants.   Accordingly, Defendants' motions to dismiss will be granted.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion to remand will be denied and Defendants' motions to dismiss will be granted.  A separate order will follow.


```
_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
```